IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HANNAH MAGEE PORTÉE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:23-CV-551-RP |
| MIKE MORATH, in his official Capacity as COMMISSIONER OF EDUCATION, TEXAS EDUCATION AGENCY, AND STATE BOARD FOR EDUCATOR CERTIFICATION, | § § § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Plaintiff Hannah Magee Portée's ("Portée") motion for preliminary injunction, (Mot., Dkt. 5). Defendants Mike Morath ("Morath"), in his official capacity as Commissioner of Education, the Texas Education Agency ("TEA"), and the State Board for Educator Certification (SBEC") (collectively, "Defendants"), filed a response, (Defs.' Resp., Dkt. 13), and Portée timely filed a reply. (Pl.'s Reply, Dkt. 14). Having considered the briefing, the arguments made at the hearing, the evidence, and the relevant law, the Court will grant the motion.

### I. BACKGROUND

This case arises from a dispute over the application and scope of a newly added provision within the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §3901, *et seq*., which guarantees the portability of certain professional licenses of U.S. servicemembers and their spouses when they relocate on military orders.

### A. The SCRA's Professional License Portability Provision

Congress enacted the SCRA to "provide for, strengthen, and expedite the national defense" by enabling servicemembers "to devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902(1). "It accomplishes this purpose by imposing limitations on judicial proceedings that could take place while a member of the armed forces is on active duty, including insurance, taxation, loans, contract enforcement, and other civil actions." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 878 (9th Cir. 2014). On January 5, 2023, the SCRA was amended to add Section 4025a, which states:

> In any case in which a servicemember or the spouse of a servicemember has a covered license and such servicemember or spouse relocates his or her residency because of military orders for military service to a location that is not in the jurisdiction of the licensing authority that issued the covered license, such covered license shall be considered valid at a similar scope of practice and in the discipline applied for in the jurisdiction of such new residency for the duration of such military orders . . .

50 U.S.C. § 4025(a).[1]

The law defines "covered license" as a professional license or certificate that: (1) is in good standing with the authority that issued it; (2) the license holder "has actively used during the two years immediately preceding the relocation"; and (3) is not a license to practice law. 50 U.S.C. § 4025a(c).[2]

---

[1] A licensee must also meet standards of practice for the relevant profession in the new jurisdiction, fulfill any continuing education requirements, and submit to the relevant disciplinary authorities. 50 U.S.C. § 4025a(a). Defendants have not disputed that Plaintiff meets these requirements. (Compl., Dkt. 1, at 10; Portée Decl., Dkt. 5-1, at 2).

[2] Section 4025a also states that when a professional license is subject to an interstate licensure compact, the terms of that compact govern. *See* 50 U.S.C. § 4025a (b). Texas is not part of any interstate licensing compact that would allow Plaintiff to use her Ohio or Missouri school counseling license to practice in Texas. (Compl., Dkt. 1, at 10).

2

## B. Factual Background

Plaintiff Hannah Magee Portée is a military spouse currently residing in Del Rio, Texas. (Compl., Dkt. 1, at 1-2; Dkt. 5-1, at 1). She became licensed as a school counselor in the state of Ohio on July 21, 2021, and later became licensed as school counselor in the state of Missouri on July 7, 2022. (Compl., Dkt.1 at 7). In 2022, she was employed as a long-term substitute counselor at a middle school in Ohio and a guidance counselor at an elementary school in Missouri. (*Id.*). On July 29, 2022, Portée married Captain David Portée, an active-duty Air Force Officer. (*Id.*). Shortly thereafter, Captain Portée received military orders for a permanent change of station from Scott Air Force Base in Illinois to Laughlin Air Force Base in Texas, requiring him to report by January 9, 2023. (*Id.*). Portée terminated her employment and relocated to Texas to accompany her husband. (*Id.*).

The Texas Education Code prohibits any school district from employing a person as a school counselor "unless the person holds an appropriate certificate or permit issued" by the Commissioner, TEA, or SBEC. TEX. EDUC. CODE § 21.003(a). In turn, the state's Administrative Code sets out certain requirements and processes that govern the certification of professional educators in Texas. *See* 19 TEX. ADMIN. CODE § 230. Of relevance to this case, Texas law requires that persons seeking a Texas educator certification based on out-of-state licenses must either pass Texas examinations or submit verification of two academic years of full-time, wage-earning experience in a public or private school in the licensed position. *Id.* § 230.113(b).

On October 4, 2022, Portée applied to obtain a SBEC-issued school counselor certificate so she could seek employment as a school counselor in Texas. (Compl., Dkt.1 at 7). Her application was immediately rejected, for the stated reason that she failed to verify two years of full-time, wage-earning experience in the role of a school counselor. (*Id.* at 8).

In February 2023, Plaintiff learned of the SCRA's new provision governing portability of military spouses' licenses and informed Defendants of the new federal requirements. (*Id.*). Defendants, through TEA's Director of Educator Credentialing, responded that Texas law still required Plaintiff to provide "documentation verifying two (2) academic years of full-time, wage-earning experience in the role of school counselor or provide documentation of a classroom teaching certificate." (*Id.* at 8-9). The Director further stated that "during the call you mentioned an Air Force article stating something to the effect of automatically transferring certifications, however, this would not apply to Texas." (*Id.*).

Plaintiff engaged an attorney and continued communicating with the Director regarding the SCRA's new license portability requirements. (*Id.* at 9). On March 2, 2023, the Director responded again and stated that, because SCRA § 4025a(c) requires that the license have been "actively used during the two years immediately preceding the relocation," Plaintiff would still be required to submit proof of "two creditable years of service" working as a school counselor before she would be eligible for Texas certification based on her out-of-state licenses. (Portée Decl., Dkt. 5-1, at 5).

### C. Procedural History

On May 17, 2023, Plaintiff filed this action asserting a single count against Defendants for violating 50 U.S.C. § 4025a.[3] The Complaint alleges that Plaintiff's out-of-state licenses are "covered

---

[3] Defendant TEA is an arm of the State tasked by the State Legislature to "administer and monitor compliance with education programs required by federal and state law." (*Id.*) (citing Tex. Educ. Code §7.021(b)(1)). Defendant SBEC is a state board created by the Texas Legislature to "regulate and oversee all aspects of the certification, continuing education, and standards of conduct of public school educators." (*Id.*) (citing TEX. EDUC. CODE §21.031(a)). Defendant Mike Morath ("Morath") is the Texas Commissioner of Education and TEA's executive officer. His official responsibilities include, among others, "adopt[ing] rules establishing exceptions to the examination requirements . . . for an educator from outside the state, including . . . military spouses . . . to obtain a certificate in this state." *Id.* § 21.052(a-1).

licenses" for purposes of the SCRA § 4025a, that she has met all requirements for portability, and that Defendants' refusal to certify her out-of-state licenses violates the SCRA. She seeks declaratory and injunctive relief, plus attorney fees and costs. (Compl., Dkt. 1, at 11-12).

On June 16, 2023, Portée filed the instant motion for a preliminary injunction to restrain Defendants from (1) enforcing regulations, allegedly preempted by the SCRA, that disregard the federally mandated portability and validity of her out-of-state school counselor licenses; (2) arbitrarily interfering with her "vested property interest" in her portable and valid out-of-state school counselor licenses; and (3) enforcing regulations that prohibit Texas schools from employing her as a licensed school counselor. (Mot., Dkt. 5, at 1-2). On July 7, 2023, Defendants filed their response in opposition. (Defs.' Resp., Dkt. 13). On July 13, 2023, the United States of America filed a Statement of Interest supporting Portée's motion on the grounds that she is likely to succeed on the merits and that injunctive relief would serve the public interest. (Stmt. of Interest, Dkt. 15.).

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (quotation omitted). A plaintiff seeking a preliminary injunction must establish that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Id.* at 20. Plaintiff carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### III. DISCUSSION

#### A. Likelihood of Success on the Merits

The parties' central merits dispute is whether Portée's Ohio and Missouri licenses are "covered licenses" as defined by the SCRA—in particular, whether they meet the statutory requirement of having been "actively used during the two years immediately preceding [Portée's] relocation." 50 U.S.C. § 4025a(c)(2).

Defendants interpret this phrase to mean that a covered license must have been used continuously for the entire two-year period preceding relocation, such that Portée's Ohio and Missouri licenses "must have been actively used beginning in January 2021 . . . ." (S*ee* Dkt. 13 at 2, 5). Under this interpretation, Portée' is ineligible for the SCRA's portability protections because she "did not actively use the licenses until 2022 when she was employed as a school counselor in Missouri." (*Id.*). According to Defendants, this precludes her SCRA claim and "deprives her of standing" because it nullifies any cognizable injury. (*Id.* at 6). Moreover, because their proffered interpretation of Section 4025a(c)(2) is compatible with Texas's own two-year work requirement for out-of-state licensees, Defendants also argue there is no conflict preemption between the SCRA and Texas law. (*Id.* at 9) (arguing that "Texas law clearly requires an individual with a non-Texas license to verify two years of experience to receive an exemption from an assessment exam, just as the SCRA requires two years of experience for a license to be deemed 'covered'").

Portée contends that Defendants' interpretation is unsupported by the SCRA's plain language and undermines its statutory purpose. She argues that Section 4025a(c)(2) requires only that she used her Missouri and Ohio licenses "at any point in the course of" the two-year period preceding her move to Texas. (Pl.'s Reply, Dkt. 14, at 4). Under this reading, Portée's out-of-state

licenses are covered because she actively used them while working as a school counselor in 2022. (*Id.*).

No court has yet interpreted the SCRA's license portability provisions. When interpreting a statute, courts look at the plain language of the statute and give the words used their plain and common meaning. *Perrin v. United States*, 444 U.S. 37, 42 (1979). Here, dictionary definitions are of limited use because they can provide support for either side. For example, according to Webster's, the word "during" can either mean "throughout the duration of"—as Defendants argue—or "at a point in the course of"—as Portée argues. (*See* Merriam-Webster Online, www.merriam-webster.com/dictionary/during). Where a word is susceptible to more than one meaning, courts can discern the meaning of the statute by examining the context in which it is used. *Deal v. United States*, 508 U.S. 129, 131-32 (1993). Here, the context in which the word "during" is used in Section 4025a suggests that Congress intended it to mean "at a point in the course of." For starters, if Congress had meant to impose a requirement of two-years' continuous employment, it could have easily done so by requiring that covered licenses be "continuously used during" the two years preceding relocation. Instead, Congress required only that covered licenses be "actively used during" this period, which is more suggestive of a focus on ensuring a degree of currentness in a licensee's experience.

Further, as the United States notes, many courts analyzing the statutory meaning of the term "during" in similar contexts have construed it to mean at "at some point during" a given period. (Stmt. of Interest, Dkt. 15, at 10-11). *See, e.g.*, *Darling v. United States*, 2016 U.S. Dist. LEXIS 117014, *13 (W.D. Tenn. Aug. 31, 2016) (statute that required medical experts to have practiced in Tennessee or a contiguous state "during the preceding year" construed to mean at some point during the preceding year and not throughout the entire preceding year). And, elsewhere throughout

the SCRA itself, the word "during" is frequently used in contexts that are consistent with this definition. *See, e.g.*, 50 U.S.C. § 3953(c) (provision protecting against nonjudicial mortgage foreclosures states that, "A sale, foreclosure, or seizure of property . . . shall not be valid if made *during*, or within one year after, the period of the servicemember's military service . . .") (emphasis added).

Moreover, Plaintiff's interpretation is consistent with the statute's purpose, which is to "provide for, strengthen, and expedite the national defense" by enabling servicemembers and their spouses "to devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902(1). In light of these clear statutory goals, courts have long held that SCRA should "be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 878 (9th Cir. 2014), citing *Boone v. Lightner*, 319 U.S. 561, 575 (1943) (interpreting the Soldiers' and Sailors' Civil Relief Act (SSCRA), a predecessor statute to the SCRA); *see also Le Maistre v. Leffers*, 333 U.S. 1, 6 (1948) (giving a broad construction to the SSCRA in light of its "beneficent purpose" and noting that "the Act must be read with an eye friendly to those who dropped their affairs to answer their country's call."). Defendants' interpretation would seem to undermine Congress's "beneficent purpose" by imposing narrow and seemingly arbitrary restrictions on the ability of servicemembers and their spouses to port their professional licenses. For example, Defendants' interpretation would operate to ban newly licensed individuals from porting their credentials across state lines in the event of a military transfer. At the same time, it would also disqualify deeply experienced licensees who work part-time or who happened to take recent work leave for medical or personal reasons. Given the unpredictable timing and frequency of military-ordered moves, this approach would make license portability impossible for many servicemembers and spouses.

In the absence of clear textual support, Defendant's interpretation cannot be squared with either the SCRA's language or its purpose. Instead, Section 4025a(c)(2) is more reasonably construed to mean that a covered license must have been actively used "at some point during" the two years immediately preceding relocation. Plaintiff has shown that she meets this condition, and her Ohio and Missouri licenses are likely "covered licenses" under the SCRA. Because the Court rejects Defendants' interpretation of Section 4025a(c)(2), it declines to address Defendants' corollary arguments that Plaintiff lacks standing or that SCRA § 4025a does not conflict with Texas law. (*See* Def.'s Resp., Dkt. 13, at 9).[4]

Finally, Defendants argue that "to the extent Plaintiff alleges a violation of her substantive due process rights separate from her claim brought under the SCRA, those claims are barred by sovereign immunity." (Defs' Resp., Dkt. 13, at 9-10). The Court does not construe the Complaint to assert a constitutional claim, so Defendants' arguments on this score are effectively moot. However, for the sake of completeness, the Court will briefly address whether sovereign immunity is likely to bar Plaintiff's statutory claim.

In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court. *See Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). It likewise prohibits suits against state agencies and officials that are effectively suits against a state. *See, e.g., Edelman v. Jordan*, 415 U.S. 651 (1974) (extending sovereign immunity to state officers in their official capacities). However, the *Ex parte Young* doctrine provides a limited exception to

---

[4] Defendants also argue that Plaintiff's "preemption argument" is likely to fail on the merits because the Supremacy Clause does not create a private right of action. (Defs.' Resp., Dkt. 13, at 7-8). Whether the Supremacy Clause creates a private right of action is irrelevant because the SCRA itself provides one. *See* 50 U.S.C. § 4042 ("Any person aggrieved by a violation of [the SCRA]" may file an action seeking "appropriate equitable or declaratory relief"). Plaintiff's claim is expressly brought under this chapter, and Defendants cite no authorities suggesting that a separate right of action is required for SCRA claims based on preemption grounds.

Eleventh Amendment immunity for official capacity claims. *Edelman v. Jordan*, 415 U.S. 651, 664–68 (1974). Under this doctrine, sovereign immunity may be overcome when a suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution" or other federal law. *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 413–14 (5th Cir. 2004). "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002) (quotation omitted)). Here, Plaintiff brings a claim for prospective relief against Commissioner Morath and alleges an ongoing violation of federal law—the SCRA. At this juncture, Defendants have not shown that the *Ex parte Young* doctrine does not apply or that sovereign immunity otherwise bars Plaintiff's suit.

In sum, the Court finds that Portée has demonstrated a likelihood of success on the merits of her claim.

### B. Irreparable Harm

To establish irreparable harm to support a preliminary injunction, a party must demonstrate a "significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986). Here, Portée claims she will face irreparable harm absent preliminary injunctive relief because Defendants' ongoing failure to recognize her out-of-state licenses as valid is preventing her from pursuing employment opportunities in her chosen profession. (Compl., Dkt. 1, at 10; Portée Decl., Dkt. 5-1, at 2). Portée avers that she has applied and interviewed for school

counselor positions, but she remains ineligible because Defendants have not recognized the validity of her out-of-state licenses for use in Texas. (*Id.*).

The loss of opportunity to pursue one's chosen profession or to find comparable employment can constitute irreparable harm. *Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017); *see also Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997). Defendants cite no authorities to the contrary but argue Portée's asserted injury is not irreparable because "to the extent Plaintiff prevails on her claim (which Defendants dispute), she may be compensated through monetary relief." (Defs' Resp., Dkt. 13, at 15). But Defendants do not explain how Portée could expect to receive monetary relief in this case when she does not even assert a claim for compensatory damages. *See Texas v. United States Env't Prot. Agency*, 829 F.3d 405, 434 (5th Cir. 2016) (observing that "costs imposed on parties are irreparable where they cannot be recovered 'in the ordinary course of litigation.'") (quotation omitted). In any event, claims for money damages against state entities and officials are generally barred by sovereign immunity, which makes Portée's harm irreparable for purposes of seeking preliminary injunctive relief. *See Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021) (compliance costs not reparable "because federal agencies generally enjoy sovereign immunity for any monetary damages"). Accordingly, the Court finds that Portée has sufficiently demonstrated an imminent risk of irreparable harm.

### C. Balance of Equities

To meet this factor, a plaintiff must establish that her irreparable harm is greater than the hardship that the preliminary injunction would cause Defendants. *Winter*, 555 U.S. at 20. Portée argues the equities favor an injunction because "there is no harm from issuing a preliminary injunction that prevents the enforcement of an unconstitutional statute," (Mot., Dkt. 5, at 17), but, as previously noted, Portée has not pled a constitutional claim. Portée also suggests that enjoining

Defendants from enforcing Texas's two-year work experience requirement would not pose a substantial harm to Defendants when measured against her injury, especially considering that she can demonstrate at least one year of relevant work experience and otherwise meets Texas's and the SCRA's requirements. (Mot., Dkt. 5, at 17). As Defendants present no arguments on this factor, the Court finds that the balance of equities favors Portée.

### D.  Public Interest

Finally, Portée argues that an injunction would serve the public interest because Defendants' alleged violation of the SCRA "harms the federal right of our nation's military spouses to work," and because "allowing Plaintiff to utilize her professional license to fill statewide school vacancies benefits the State and the People." (Mot., Dkt. 5, at 17-18). Similarly, the United States asserts that "[e]nforcement of Section 4025a serves the public interest by reducing barriers to licensure and increasing employment opportunities for eligible servicemembers and military spouses," which is a key factor in recruitment and force retention. (Stmt. of Interest, Dkt. 15, at 7, 14). Defendants argue this factor weighs against injunctive relief. Citing the State's strong public interest "to ensure the qualification and licensure of Texas teachers," they argue that "it serves neither the State nor public's best interest to allow individuals to forego licensure requirements." (Defs.' Resp., Dkt 13, at 15).

The state of Texas undoubtedly has a strong interest in regulating the qualification and licensure of its educators. However, given the national importance of the policy objectives underlying the SCRA, coupled with the relatively limited encroachment to Defendants' regulatory authority, the Court finds that, on balance, a preliminary injunction will serve the public interest.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Portée's motion for preliminary injunction, (Mot., Dkt. 5), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants are enjoined from enforcing 19 TEX. ADMIN. CODE § 230.113(b) with respect to Hannah Magee Portée's application for a Texas educator certificate to the extent it requires verification of two creditable years of service in the specific student services or administrative area sought.

**SIGNED** on July 21, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE