IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HANNAH MAGEE PORTEE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:23-CV-551-RP |
| MIKE MORATH *in his official capacity as Commissioner of Education*, TEXAS EDUCATION AGENCY, and STATE BOARD FOR EDUCATOR CERTIFICATION, | § § § § § § § | |
| Defendants. | § § | |

# ORDER

Before the Court is Plaintiff Hannah Magee Portèe's ("Portèe") Motion for Judgment on the Pleadings. (Mot., Dkt. 17). Defendants Mike Morath ("Morath"), in his official capacity as Commissioner of Education, the Texas Education Agency ("TEA"), and the State Board for Educator Certification ("SBEC") (collectively, "Defendants") did not file a response to Plaintiff's motion.[1] After reviewing Plaintiff's motion, the record, and the relevant law, the Court will grant the motion.

## I. BACKGROUND

This case arises from a dispute over the application and scope of a newly added provision within the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901, *et seq.*, which guarantees the

---

[1] After Defendants failed to timely respond to Plaintiff's Motion for Judgment on the Pleadings, the Court issued a text order notifying Defendants that it would be taking Plaintiff's motion under advisement and ordered Defendants to respond on or before August 21, 2023. On August 21, 2023, Defendants filed a motion for extension of time to file their response on or before September 5, 2023, (Dkt. 18), and the Court granted that request on August 22, 2023. On September 5, 2023, Defendants filed a motion requesting a second time extension. (Dkt. 19). Plaintiff opposed this second time extension. (Dkt. 20). The Court denied Defendants' request for a second time extension on September 11, 2023.

1

portability of certain professional licenses of U.S. servicemembers and their spouses when they relocate on military orders.

### A. The SCRA's Professional License Portability Provision

Congress enacted the SCRA to "provide for, strengthen, and expedite the national defense" by enabling servicemembers "to devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902(1). "It accomplishes this purpose by imposing limitations on judicial proceedings that could take place while a member of the armed forces is on active duty, including insurance, taxation, loans, contract enforcement, and other civil actions." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 878 (9th Cir. 2014). On January 5, 2023, the SCRA was amended to add Section 4025a, which states:

> In any case in which a servicemember or the spouse of a servicemember has a covered license and such servicemember or spouse relocates his or her residency because of military orders for military service to a location that is not in the jurisdiction of the licensing authority that issued the covered license, such covered license shall be considered valid at a similar scope of practice and in the discipline applied for in the jurisdiction of such new residency for the duration of such military orders . . .

50 U.S.C. § 4025a(a).[2]

The law defines "covered license" as a professional license or certificate that: (1) is in good standing with the authority that issued it; (2) the license holder "has actively used during the two years immediately preceding the relocation"; and (3) is not a license to practice law. 50 U.S.C. § 4025a(c).[3]

---

[2] A licensee must also meet standards of practice for the relevant profession in the new jurisdiction, fulfill any continuing education requirements, and submit to the relevant disciplinary authorities. 50 U.S.C. § 4025a(a). Defendants have not disputed that Plaintiff meets these requirements. (Compl., Dkt. 1, at 10; Portée Decl., Dkt. 5-1, at 2).

[3] Section 4025a also states that when a professional license is subject to an interstate licensure compact, the terms of that compact govern. *See* 50 U.S.C. § 4025a(b). Texas is not part of any interstate licensing compact that would allow Plaintiff to use her Ohio or Missouri school counseling license to practice in Texas. (Compl., Dkt. 1, at 10).

**B. Factual Background**

Plaintiff Hannah Magee Portée is a military spouse currently residing in Del Rio, Texas. (Compl., Dkt. 1, at 1-2; Dkt. 5-1, at 1). She became licensed as a school counselor in the state of Ohio on July 21, 2021, and later became licensed as school counselor in the state of Missouri on July 7, 2022. (Compl., Dkt.1 at 7). In 2022, she was employed as a long-term substitute counselor at a middle school in Ohio and a guidance counselor at an elementary school in Missouri. (*Id.*). On July 29, 2022, Portée married Captain David Portée, an active-duty Air Force Officer. (*Id.*). Shortly thereafter, Captain Portée received military orders for a permanent change of station from Scott Air Force Base in Illinois to Laughlin Air Force Base in Texas, requiring him to report by January 9, 2023. (*Id.*). Portée terminated her employment and relocated to Texas to accompany her husband. (*Id.*).

The Texas Education Code prohibits any school district from employing a person as a school counselor "unless the person holds an appropriate certificate or permit issued" by the Commissioner, TEA, or SBEC. TEX. EDUC. CODE § 21.003(a). In turn, the state's Administrative Code sets out certain requirements and processes that govern the certification of professional educators in Texas. *See* 19 TEX. ADMIN. CODE § 230. Of relevance to this case, Texas law requires that persons seeking a Texas educator certification based on out-of-state licenses must either pass Texas examinations or submit verification of two academic years of full-time, wage-earning experience in a public or private school in the licensed position. *Id.* § 230.113(b). On October 4, 2022, Portée applied to obtain a SBEC-issued school counselor certificate so she could seek employment as a school counselor in Texas. (Compl., Dkt. 1, at 7). Her application was immediately rejected, for the stated reason that she failed to verify two years of full-time, wage-earning experience in the role of a school counselor. (*Id.* at 8).

In February 2023, Portèe learned of the SCRA's new provision governing portability of military spouses' licenses and informed Defendants of the new federal requirements. (*Id.*). Defendants, through TEA's Director of Educator Credentialing, responded that Texas law still required Portèe to provide "documentation verifying two (2) academic years of full-time, wage-earning experience in the role of school counselor or provide documentation of a classroom teaching certificate." (*Id.* at 8-9). The Director further stated that "during the call you mentioned an Air Force article stating something to the effect of automatically transferring certifications, however, this would not apply to Texas." (*Id.*). Portèe engaged an attorney and continued communicating with the Director regarding the SCRA's new license portability requirements. (*Id.* at 9). On March 2, 2023, the Director responded again and stated that, because SCRA § 4025a(c) requires that the license have been "actively used during the two years immediately preceding the relocation," Portèe would still be required to submit proof of "two creditable years of service" working as a school counselor before she would be eligible for Texas certification based on her out-of-state licenses. (Portée Decl., Dkt. 5-1, at 5).

### C. Procedural History

On May 17, 2023, Portèe filed this action asserting a single count against Defendants for violating 50 U.S.C. § 4025a.[4] The Complaint alleges that Portèe's out-of-state licenses are "covered licenses" for purposes of the SCRA § 4025a, that she has met all requirements for portability, and

---

[4] Defendant TEA is an arm of the State tasked by the State Legislature to "administer and monitor compliance with education programs required by federal and state law." (*Id.*) (citing TEX. EDUC. CODE §7.021(b)(1)). Defendant SBEC is a state board created by the Texas Legislature to "regulate and oversee all aspects of the certification, continuing education, and standards of conduct of public school educators." (*Id.*) (citing TEX. EDUC. CODE § 21.031(a)). Defendant Mike Morath ("Morath") is the Texas Commissioner of Education and TEA's executive officer. His official responsibilities include, among others, "adopt[ing] rules establishing exceptions to the examination requirements . . . for an educator from outside the state, including . . . military spouses . . . to obtain a certificate in this state." *Id.* § 21.052(a-1).

4

that Defendants' refusal to certify her out-of-state licenses violates the SCRA. She seeks declaratory and injunctive relief, plus attorney's fees and costs. (Compl., Dkt. 1, at 11–12).

On June 16, 2023, Portée filed a motion for a preliminary injunction to restrain Defendants from (1) enforcing regulations, allegedly preempted by the SCRA, that disregard the federally mandated portability and validity of her out-of-state school counselor licenses; (2) arbitrarily interfering with her "vested property interest" in her portable and valid out-of-state school counselor licenses; and (3) enforcing regulations that prohibit Texas schools from employing her as a licensed school counselor. (PI Mot., Dkt. 5, at 1–2). On July 7, 2023, Defendants filed their response in opposition. (Defs.' Resp., Dkt. 13). On July 13, 2023, the United States of America filed a Statement of Interest supporting Portée's motion on the grounds that she is likely to succeed on the merits and that injunctive relief would serve the public interest. (Stmt. of Interest, Dkt. 15). The Court granted Portée's motion for a preliminary injunction on July 21, 2023, and enjoined Defendants from enforcing 19 TEX. ADMIN. CODE § 230.113(b) with respect to Portée's application for a Texas educator certificate to the extent it requires verification of two creditable years of service in the specific student services or administrative area sought. (Order, Dkt. 16).

On August 1, 2023, Portée filed the instant motion for judgment on the pleadings. (Mot., Dkt. 17). Defendants never answered or otherwise responded to Portée's original complaint. Neither did Defendants file a response to Portée's motion for judgment on the pleadings. Defendants' only responsive pleading was their response in opposition to Portée's motion for a preliminary injunction. (*See* Defs.' Resp., Dkt. 13). In her motion for judgment on the pleadings, Portée requests that the Court enter a judgment declaring that Defendants violated the SCRA, permanently enjoining Defendants from continuing to violate the SCRA, and determining that Portée is entitled to recover costs of court and reasonable attorney's fees. (Mot., Dkt. 17).

## II. LEGAL STANDARD

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002). The Fifth Circuit applies the same standard to a motion under Rule 12(c) as it does for a motion under Rule 12(b)(6). *Id.,* at 313 n.8; *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir.1999).

In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference,

6

and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### III. DISCUSSION

#### A. Factual Disputes

As Portée's motion for judgment on the pleadings correctly points out, there are no factual disputes in this case. Defendants never answered or otherwise responded to Portée's complaint. They did not file a response to the instant motion for judgment on the pleadings either. In their responsive pleading to Portée's motion for a preliminary injunction, they did not contest any of the facts Portée plead in her complaint. Rather, Defendants contested Portée's interpretation of "covered license" under the SCRA. (Defs.' Resp., Dkt. 13). As there are no material facts in dispute, the Court can render a judgment "by looking to the substance of the pleadings." *Great Plains Trust Co.,* 313 F.3d at 312.

#### B. "Covered Licenses"

Defendants never pleaded an answer to Portée's complaint, nor did they file a response to Portée's motion for judgment on the pleadings. Because the Court only has briefing from Defendants in relation to Portée's motion for a preliminary injunction, the Court, in its discretion, will consider Portée's motion for a preliminary injunction, (Dkt. 5), Defendants' response, (Dkt. 13), Portée's reply, (Dkt. 14), and the United States' statement of interest, (Dkt. 15), in addition to Portée's complaint in reaching a decision on this instant motion.[5] The parties' central dispute is whether Portée's Ohio and Missouri licenses are "covered licenses" as defined by the SCRA—in

---

[5] Given the lack of responses from Defendants and their failures to defend the case, the Court also may be entitled to grant Portee's motion as unopposed. However, out of an abundance of caution, the Court provides a full analysis. The Court also notes that its conclusion would be the same if it did not consider any other filings in this case and only considered Portee's motion and her complaint.

7

particular, whether they meet the statutory requirement of having been "actively used during the two years immediately preceding [Portée's] relocation." 50 U.S.C. § 4025a(c)(2).

In their response to the motion for preliminary injunction, Defendants interpret this phrase to mean that a covered license must have been used continuously for the entire two-year period preceding relocation, such that Portée's Ohio and Missouri licenses "must have been actively used beginning in January 2021 . . . ." (*See* Dkt. 13 at 2, 5). Under this interpretation, Portée' is ineligible for the SCRA's portability protections because she "did not actively use the licenses until 2022 when she was employed as a school counselor in Missouri." (*Id.*). According to Defendants, this precludes her SCRA claim and "deprives her of standing" because it nullifies any cognizable injury. (*Id.* at 6). Moreover, because their proffered interpretation of Section 4025a(c)(2) is compatible with Texas's own two-year work requirement for out-of-state licensees, Defendants also argue there is no conflict preemption between the SCRA and Texas law. (*Id.* at 9) (arguing that "Texas law clearly requires an individual with a non-Texas license to verify two years of experience to receive an exemption from an assessment exam, just as the SCRA requires two years of experience for a license to be deemed 'covered'").

Portée contends that Defendants' interpretation is unsupported by the SCRA's plain language and undermines its statutory purpose. She argues that Section 4025a(c)(2) requires only that she used her Missouri and Ohio licenses "at any point in the course of" the two-year period preceding her move to Texas. (Pl.'s Reply, Dkt. 14, at 4). Under this reading, Portée's out-of-state licenses are covered because she actively used them while working as a school counselor in 2022. (*Id.*).

No court has yet interpreted the SCRA's license portability provisions. When interpreting a statute, courts look at the plain language of the statute and give the words used their plain and common meaning. *Perrin v. United States*, 444 U.S. 37, 42 (1979). Here, dictionary definitions are of

limited use because they can provide support for either side. For example, according to Webster's, the word "during" can either mean "throughout the duration of"—as Defendants argue—or "at a point in the course of"—as Portée argues. (*See* Merriam-Webster Online, www.merriam-webster.com/dictionary/during). Where a word is susceptible to more than one meaning, courts can discern the meaning of the statute by examining the context in which it is used. *Deal v. United States*, 508 U.S. 129, 131-32 (1993). Here, the context in which the word "during" is used in Section 4025a suggests that Congress intended it to mean "at a point in the course of." For starters, if Congress had meant to impose a requirement of two-years' continuous employment, it could have easily done so by requiring that covered licenses be "continuously used during" the two years preceding relocation. Instead, Congress required only that covered licenses be "actively used during" this period, which is more suggestive of a focus on ensuring a degree of currentness in a licensee's experience.

Further, as the United States notes, many courts analyzing the statutory meaning of the term "during" in similar contexts have construed it to mean at "at some point during" a given period. (Stmt. of Interest, Dkt. 15, at 10–11). *See, e.g.*, *Darling v. United States*, 2016 U.S. Dist. LEXIS 117014, *13 (W.D. Tenn. Aug. 31, 2016) (statute that required medical experts to have practiced in Tennessee or a contiguous state "during the preceding year" construed to mean at some point during the preceding year and not throughout the entire preceding year). And, elsewhere throughout the SCRA itself, the word "during" is frequently used in contexts that are consistent with this definition. *See, e.g.*, 50 U.S.C. § 3953(c) (provision protecting against nonjudicial mortgage foreclosures states that, "A sale, foreclosure, or seizure of property . . . shall not be valid if made *during*, or within one year after, the period of the servicemember's military service . . .") (emphasis added).

9

Moreover, Portèe's interpretation is consistent with the statute's purpose, which is to "provide for, strengthen, and expedite the national defense" by enabling servicemembers and their spouses "to devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902(1). In light of these clear statutory goals, courts have long held that SCRA should "be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Brewster v. Sun Tr. Mortg., Inc.*, 742 F.3d 876, 878 (9th Cir. 2014) (citing *Boone v. Lightner*, 319 U.S. 561, 575 (1943) (interpreting the Soldiers' and Sailors' Civil Relief Act (SSCRA), a predecessor statute to the SCRA)); *see also Le Maistre v. Leffers*, 333 U.S. 1, 6 (1948) (giving a broad construction to the SSCRA in light of its "beneficent purpose" and noting that "the Act must be read with an eye friendly to those who dropped their affairs to answer their country's call."). Defendants' interpretation would seem to undermine Congress's "beneficent purpose" by imposing narrow and seemingly arbitrary restrictions on the ability of servicemembers and their spouses to port their professional licenses. For example, Defendants' interpretation would operate to ban newly licensed individuals from porting their credentials across state lines in the event of a military transfer. At the same time, it would also disqualify deeply experienced licensees who work part-time or who happened to take recent work leave for medical or personal reasons. Given the unpredictable timing and frequency of military-ordered moves, this approach would make license portability impossible for many servicemembers and spouses.

In the absence of clear textual support, Defendant's interpretation cannot be squared with either the SCRA's language or its purpose. Instead, Section 4025a(c)(2) is more reasonably construed to mean that a covered license must have been actively used "at some point during" the two years immediately preceding relocation. Portèe has shown that she meets this condition, and her Ohio and Missouri licenses are therefore "covered licenses" under the SCRA. Because the Court rejects Defendants' interpretation of Section 4025a(c)(2), it declines to address Defendants' corollary

10

arguments that Portèe lacks standing or that SCRA § 4025a does not conflict with Texas law. (*See* Def.'s Resp., Dkt. 13, at 9).[6]

Finally, Defendants argue that "to the extent Plaintiff alleges a violation of her substantive due process rights separate from her claim brought under the SCRA, those claims are barred by sovereign immunity." (Defs' Resp., Dkt. 13, at 9-10). The Court does not construe the complaint to assert a constitutional claim, so Defendants' arguments on this score are effectively moot. However, for the sake of completeness, the Court will briefly address whether sovereign immunity bars Portee's statutory claim. In most cases, Eleventh Amendment sovereign immunity bars private suits against nonconsenting states in federal court. *See Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). It likewise prohibits suits against state agencies and officials that are effectively suits against a state. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651 (1974) (extending sovereign immunity to state officers in their official capacities). However, the *Ex parte Young* doctrine provides a limited exception to Eleventh Amendment immunity for official capacity claims. *Edelman v. Jordan*, 415 U.S. 651, 664–68 (1974). Under this doctrine, sovereign immunity may be overcome when a suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution" or other federal law. *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 413–14 (5th Cir. 2004). "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv.*

---

[6] Defendants also argue that Plaintiff's "preemption argument" is likely to fail on the merits because the Supremacy Clause does not create a private right of action. (Defs.' Resp., Dkt. 13, at 7–8). Whether the Supremacy Clause creates a private right of action is irrelevant because the SCRA itself provides one. *See* 50 U.S.C. § 4042 ("Any person aggrieved by a violation of [the SCRA]" may file an action seeking "appropriate equitable or declaratory relief"). Plaintiff's claim is expressly brought under this chapter, and Defendants cite no authorities suggesting that a separate right of action is required for SCRA claims based on preemption grounds.

11

*Com'n of Md.*, 535 U.S. 635, 645 (2002) (quotation omitted)). Here, Portèe brings a claim for prospective relief against Commissioner Morath and alleges an ongoing violation of federal law—the SCRA. Defendants have failed to show that the *Ex parte Young* doctrine does not apply or that sovereign immunity otherwise bars Portèe's suit.

For the reasons given, the Court holds that Defendants' interpretation of "covered license" under 50 U.S.C. § 4025a is incorrect. By refusing to grant Portèe's application for a Texas educator certificate because Portèe did not continuously use her school counselor licenses for the entire two-year period preceding relocation to Texas, Defendants are in violation of the SCRA.

### C. Permanent Injunction

Portèe seeks to convert the preliminary injunction that the Court entered on July 21, 2023, (Dkt. 16), into a permanent injunction. (Mot., Dkt. 17, at 4). A plaintiff seeking a permanent injunction must generally satisfy a four-factor test: (1) it has succeeded on the merits; (2) failure to grant the injunction will result in irreparable injury; (3) such an injury would outweigh any damage that the injunction will cause the opposing party; and (4) a permanent injunction would not disserve the public interest. *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021). All four factors weigh in favor of granting a permanent injunction against Defendants.

First, as explained above, Portèe has demonstrated success on the merits, thus establishing the first permanent injunction factor. Second, failure to grant the injunction will result in irreparable injury to Portèe. The loss of opportunity to pursue one's chosen profession or to find comparable employment can constitute irreparable harm. *Burgess v. FDIC*, 871 F.3d 297, 304 (5th Cir. 2017); *see also Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997). Without Defendants' recognition of her out-of-state license as valid in Texas, Portèe has been ineligible for school counselor positions. As of August 1, 2023, Defendants still have not issued any certification to Portèe that would allow her to use her licenses in Texas. (Mot., Dkt. 17, at 3). Further, Portèe's only

12

avenue for avoiding this irreparable injury is through declaratory and injunctive relief. Portèe does not seek compensatory damages nor is she able to recover money damages. Claims for money damages against state entities and officials are generally barred by sovereign immunity. *See Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021) (compliance costs not reparable "because federal agencies generally enjoy sovereign immunity for any monetary damages"). Further, "where costs are not recoverable because the government-defendant enjoys sovereign immunity from monetary damages, irreparable harm is generally satisfied." *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, No. 4:23-CV-00830-O, 2023 WL 5610293, at *8 (N.D. Tex. Aug. 30, 2023) (citing *Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1142 (5th Cir. 2021)).

Third, on balance, Portèe's injury that would result from failing to enjoin Defendants outweighs any damages Defendants may incur from the enjoinment. The injunction applies solely to the plaintiff in the instant case, and Portèe has at least one year of relevant work experience and otherwise meets Texas's and the SCRA's requirements. (PI Mot., Dkt 5, at 17). Further, Defendants have not taken any opportunity to allege that they would be injured by the injunction. However, even if Defendants had alleged potential injuries, "any injury to [the enjoined party] is outweighed by [a] strong likelihood of success on the merits" by the party seeking the injunction. *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 316 (5th Cir. 2021). Fourth, and finally, a permanent injunction will not disserve the public interest. Courts should "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). While the State of Texas undoubtedly has a strong interest in regulating the qualification and licensure of its educators, the injunction will not disserve the public interest. SCRA's policy objectives are of national importance and the encroachment on Defendants' regulatory authority is relatively limited.

Therefore, the Court will convert the existing preliminary injunction into a permanent injunction.

### D. Costs of Court and Attorney's Fees

Under the SCRA, the Court "may award to a person aggrieved by a violation of this chapter who prevails in an action brought under subsection (a) the costs of the action, including a reasonable attorney fee." 50 U.S.C. § 4042(b). Portèe has prevailed in an action brought under subsection (a) as she has "obtain[ed] . . . appropriate equitable [and] declaratory relief with respect to the violation" of the SCRA. *Id.* at § 4042(a). Thus, the Court will award Portèe the costs of court and reasonable attorney's fees.

### IV. CONCLUSION

Section 4025a of the SCRA requires that Portèe have used her school counseling licenses *at some point* during the two years immediately preceding her relocation due to military orders, not that she have used her licenses *continuously* for the preceding two years. Therefore, requiring Portèe to have used her school counselor licenses continuously for the two years preceding her relocation in order for her licenses to be portable is a violation of the SCRA.

For the reasons given above, **IT IS ORDERED** that Plaintiff's Motion for Judgment on the Pleadings, (Dkt. 17), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants violated the Servicemembers Civil Relief Act, 50 U.S.C. § 4025a, to the extent that they required Portèe to verify continuous use of her school counseling licenses for a two-year period preceding her relocation to Texas in order to obtain a Texas educator certification based on her out-of-state licenses.

**IT IS FURTHER ORDERED** that Defendants are permanently enjoined from enforcing 19 TEX. ADMIN. CODE § 230.113(b) with respect to Hannah Magee Portée's application for a

Texas educator certificate to the extent it requires verification of continuous use of her out-of-state school counseling licenses for a two-year period prior to her relocation.

**IT IS FINALLY ORDERED** that Portèe is entitled to recover costs of court and reasonable attorney's fees.

The Court will enter a separate final judgment order.

**SIGNED** on November 20, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE